Joseph William Roesler (SBN 353127)
Email: joey@cmgworldwide.com
Ashkon Michael Ariaee (SBN 363695)
Email: ash@cmgworldwide.com
Conor James Singleton Winston (SBN 363788)
Email: conor@cmgworldwide.com
**CMG LAW APC**
9777 Wilshire Boulevard
Suite 1018
Beverly Hills, CA 90212
Telephone: (310) 651-2000

John Tehranian (SBN 211616)
Email: jtehranian@onellp.com
Peter R. Afrasiabi (SBN 193336)
Email: pafrasiabi@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Telephone: (949) 502-2870
Facsimile: (949) 258-5081

Attorney for Plaintiff,
DRUYAN-SAGAN ASSOCIATES, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DRUYAN-SAGAN ASSOCIATES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>LUMA AI, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br>**(1) COPYRIGHT INFRINGEMENT (17 U.S.C. § 501);**<br>**(2) FALSE ENDORSEMENT / TRADEMARK INFRINGEMENT (15 U.S.C. § 1125(a)); AND**<br>**(3) UNFAIR COMPETITION (COMMON LAW)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Druyan-Sagan Associates, Inc. ("Druyan-Sagan" or "Plaintiff"), by and through its undersigned attorneys, hereby brings this Complaint against Defendants Luma AI, Inc. ("Luma") and DOES 1-10, inclusive (collectively, "Defendants"), as follows:

## NATURE OF THE ACTION

1. Dr. Carl Edward Sagan ("Sagan" or "Dr. Sagan") is a legend. He was a renowned astronomer, planetary scientist, and science communicator. As a revered public intellectual, he famously served as the host of the television series *Cosmos*, wrote numerous best-selling books, co-founded the Planetary Society, and oversaw such significant NASA missions as the Voyager, Mariner, Viking and Galileo projects. Dr. Sagan was also celebrated for his distinctive voice, delivery, and persona, as epitomized by famous impersonations of him on *The Tonight Show*, *Saturday Night Live* and other outlets.

2. In his many decades operating in the public eye, Dr. Sagan firmly established himself as perhaps the most beloved and trusted advocate for technological development and innovation grounded in humanistic values. No one captured the sheer awe of the universe and our place within it more distinctively and iconically than Dr. Sagan, and his life mission focused on promoting an optimistic vision of science where technology would improve humanity's lot and serve the needs of individuals rather than rendering them invisible or, worse yet, obsolete.

3. It is therefore not surprising that a technology company—especially one promoting a new artificial intelligence ("AI") product—would want to firmly associate itself, its brand and its leading products and services with Dr. Sagan. After all, the rise of AI platforms has brought great promise but also provoked widespread anxiety, fear, and concern amongst the consuming public. But, Dr. Sagan's renown, reputation, and intellectual integrity—and the goodwill associated therewith—took a lifetime to build and that is precisely why the law cannot, and does not, give quarter

to those who would unapologetically usurp and exploit it for their own crass, self-serving commercial purposes.

4. There are few principles more established in the law than the basic precept that, if a business wants to use copyrighted materials or a celebrity's persona in its advertising, it needs to obtain the proper licenses. Armed with a $4 billion valuation and $900 million in recent funding obtained from Humain, the Saudi Arabian Public Investment Fund's AI vehicle, Defendant Luma possesses all of the sophistication and resources needed to ensure it complies with such elementary legal requirements. And, yet, Luma does not.

5. Luma first decided—without permission or compensation—to usurp the intellectual property of the legendary public intellectual and scientist in order to dragoon him into acting as an unwitting spokesperson for their brand and latest AI product. Then, upon being caught red-handed, Luma declined to remedy its wrongdoing and, instead, elected to double down on unlawful actions by continuing to infringe. Luma's unapologetic misconduct has given Plaintiff no choice but to seek relief from this Court.

6. Plaintiff Druyan-Sagan (formerly known as Carl Sagan Productions, Inc.) is owned and managed by Ann Druyan, a renowned Emmy and Peabody-award-winning writer, producer, director and activist who has served as the creative director of NASA's Voyager Interstellar Message Project, co-wrote the *Cosmos* series, co-authored several best-selling books with Dr. Sagan, and is also Dr. Sagan's widow, and, as the entity holding the intellectual property rights of Dr. Sagan, Druyan-Sagan therefore brings this action against Defendants for willful copyright infringement, false endorsement under the Lanham Act, and common law unfair competition to obtain redress for the massive, unauthorized and continuing commercial exploitation of the voice, delivery and persona of Dr. Sagan and copyrighted materials embodying the same by Luma in its advertising for its generative AI platform, "Ray 3.14" ("Ray 3.14").

## THE PARTIES

7. Druyan-Sagan is a Delaware corporation with its principal place of business in Ithaca, New York. Druyan-Sagan is engaged in the business of, among other things, owning, managing, and licensing all intellectual property rights associated with the late Dr. Sagan, including the copyrights in the Series.

8. Luma is a Delaware corporation with its principal place of business in Palo Alto, California. On information and belief, Luma is engaged in the business of, among other things, the development, manufacturing, marketing and distribution of artificial intelligence ("AI") software, programs and other consumer products and services, to which the Infringing Advertisement (defined below) at issue in this case pertains.

9. DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will ask leave of Court to amend this Complaint and insert the true names and capacities of said Defendants when the same have been ascertained. Plaintiff is informed and believes and, upon such, alleges that each of the Defendants designated herein as a "DOE" is legally responsible in some manner for the events and happenings herein alleged, and that Plaintiff's damages as alleged herein were proximately caused by such Defendants.

## JURISDICTION AND VENUE

10. This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq.; trademark infringement and false endorsement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and common law unfair competition.

11. This Court has subject matter jurisdiction over the claims asserted under the Copyright Act and the Lanham Act pursuant to 15 U.S.C. § 1121 (original jurisdiction over Lanham Act claims), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (jurisdiction to adjudicate claims of federal copyright and trademark infringement), and it has supplemental jurisdiction over the remaining claims

pursuant to 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as Plaintiff's claims under the federal Copyright Act and Lanham Act.

12. This Court has personal jurisdiction over Luma because Luma is headquartered in California and, additionally, has continuous and systematic contacts within California, which include, without limitation:

a. Luma is qualified to do business in California and is registered as a foreign corporation with the California Secretary of State.

b. Luma maintains a strong physical presence in California, including maintaining its principal headquarters in Palo Alto, California, where it employs California residents.

c. On information and belief, Luma created and disseminated the Infringing Advertisement in connection with the commercial launch of and promotion of Ray 3.14 from its headquarters and through its business operations in this District.

d. Luma targeted California residents and residents of this District in publishing the Infringing Advertisement on its official accounts on Social Media Platforms, including its LinkedIn, YouTube, Instagram, X, and Facebook accounts, for the purpose of promoting Ray 3.14 and Luma's related commercial services.

e. Luma has purposefully availed itself of California law and could and did reasonably anticipate being brought into this Court because, among other reasons, it has engaged in infringing conduct within the State of California and this District, including by knowingly, intentionally, and repeatedly exploiting, without permission, the copyrights and trademarks of Druyan-Sagan through the dissemination of the Infringing Advertisement within this District and to California residents.

13. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c) and/or § 1400(a) in that, among other things, Defendants are found and regularly transact business in this District by, inter alia, deriving substantial revenue from commercial activities in this District; they actively and purposefully engage with, and

have substantial, continuous and systematic business ties to, this District; there is a direct and substantial nexus between the Plaintiff's claims in this case and Defendants purposefully avail themselves the privilege of conducting activities within this District; the Infringing Advertisement was and is actively and repeatedly disseminated in this District and targeted towards this District in order to, inter alia, entice residents in this District to purchase, license, or otherwise utilize Defendants' goods and services in this District; Defendants chose to direct its Infringing Advertisement at this District; and the injury suffered by Plaintiff occurred as a result of Defendants' unauthorized use of Plaintiff's intellectual property to promote and advertise their goods and services in this District.

**FACTS APPLICABLE TO ALL CLAIMS**

14. Druyan-Sagan is the sole and exclusive proprietor and owner of all rights, title and interest in and to the personal and intellectual property of the late Dr. Sagan, including but not limited to his common law trademarks associated with his distinctive voice, identity, persona and the Statement (defined below) (the "Mark") as well as the registered copyrights in and to numerous works, including all episodes of the television series *Cosmos: A Personal Voyage* (1980) ("Series"), including episode 9: "The Lives of the Stars," which was first broadcast on November 23, 1980 ("Episode") (the Mark, Series and Episode are collectively referred to as the "Property").

15. The Episode was registered with the United States Copyright Office on November 3, 1980, bearing Registration No. PA0000146361

16. The copyrighted Episode features Dr. Sagan delivering the iconic statement: "If you wish to make an apple pie from scratch, you must first invent the universe" ("Statement"). The Statement appears at approximately the 2:53 mark of the Episode.

17. Dr. Sagan's voice is immediately recognizable and remains uniquely associated with Dr. Sagan and the Series in the public mind. Indeed, the Statement is

intimately and inextricably associated with Dr. Sagan, his legacy and the goodwill associated therewith—just as Vanna White is associated with turning letters in a gown, the actors George Wendt and John Ratzinger from television show *Cheers* are associated with sitting at the end of a bar, and Tom Waits is associated with his gruff singing voice.[1]

18. Over the past thirty years, Druyan-Sagan has diligently maintained Dr. Sagan's legacy and carefully cultivated the goodwill and commercial success of the Sagan brand. Druyan-Sagan carefully reviews proposed commercial uses of the Property to ensure that each such use satisfies the stringent standards necessary to protect the integrity of Dr. Sagan's legacy and preserve the substantial commercial value and goodwill associated with the Property. In addition to careful curation and selection of the authorized uses of the Property, Druyan-Sagan likewise vigorously protects against unauthorized infringements of the Property.

19. Through decades of careful stewardship and selective licensing, Druyan-Sagan has preserved and enhanced the substantial commercial value and goodwill associated with the Property. Druyan-Sagan regularly receives requests to license limited uses of the Property in exchange for substantial fees and has generated significant revenue by authorizing such uses in connection with brand sponsorships, endorsements, commercial campaigns, and other projects. As a result of Dr. Sagan's enduring reputation, recognition, and goodwill, the Property has continued to possess substantial commercial value and generate significant revenue for nearly three decades following his death.

20. On information and belief, in or around early 2026, Luma publicly released Ray 3.14, characterized by Luma as its "most professional and powerful

---

[1] *See White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395 (9th Cir. 1992) (Vanna White); *Wendt v. Host Intern., Inc.*, 197 F.3d 1284 (9th Cir. 1999) (George Wendt and John Ratzinger); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992) (Tom Waits).

model." To advertise, market, and promote Ray 3.14, Luma created and widely disseminated a commercial advertisement featuring the Property and Statement ("Infringing Advertisement") through several of its official social media accounts, including its LinkedIn, YouTube, Instagram, X, and Facebook accounts (each, a "Social Media Platform," and collectively, the "Social Media Platforms"). Luma's publication of the Infringing Advertisement to the Social Media Platforms made it available to consumers worldwide. For example, the Infringing Advertisement has received over 2.7 million views on Luma's Facebook page alone, where it continues to remain live at the time of this filing and accumulate additional views.

21. As such, Luma has exploited the copyrighted recording of Dr. Sagan's performance, the Statement and the substantial goodwill associated with Dr. Sagan to advertise and promote Ray 3.14, by creating and distributing, without authorization, the Infringing Advertisement wherein the Statement was utilized. Druyan-Sagan, which has carefully overseen Dr. Sagan's legacy since his passing and scrupulously guarded it from actions and usages that would be antithetical to Dr. Sagan's values and ideals, did not allow, and would not have allowed, this use.

22. Luma has benefitted substantially from the unauthorized copying and distribution of the Statement as used in the Infringing Advertisement. The substantial revenue that it has made on the sale of Ray 3.14 is inextricably tied to the false message conveyed to consumers that Dr. Sagan has endorsed, sponsors, approves of, and/or is affiliated with Luma and Ray 3.14 when, in fact, he has not and is not.

23. Druyan-Sagan became aware of Luma's infringement and violation of Dr. Sagan's rights on or about February 3, 2026, when a lifelong fan of Dr. Sagan and the Series encountered the Infringing Advertisement, immediately recognized the Statement from the Episode, and contacted Druyan-Sagan to inquire whether the Infringing Advertisement and Ray 3.14 were authorized or endorsed. This inquiry provides just one example of how Luma's unauthorized use of the Statement in interstate commerce has created not merely a likelihood of confusion, but even actual

confusion, as to Druyan-Sagan's sponsorship, endorsement, approval, and affiliation of Luma and Ray 3.14.

24. Upon learning of Luma's unauthorized use, Druyan-Sagan, through its global representative, CMG Worldwide, Inc. ("CMG"), promptly notified Luma of the Infringing Advertisement. Druyan-Sagan demanded that Luma cease and desist from all unauthorized uses of Dr. Sagan and the Property, remove the Infringing Advertisement and related promotional materials from circulation, provide written assurance that Luma would refrain from future unauthorized uses, and account for the Infringing Advertisement's distribution, impressions, and related revenues.

25. On or about February 23, 2026, Luma denied Druyan-Sagan's claims, instead characterizing its unauthorized use of the Property as an unactionable *de minimis* copying that could not cause consumer confusion with respect to an association with Dr. Sagan. On or about March 9, 2026, Druyan-Sagan firmly rejected these contentions and advised Luma that its unauthorized use had already caused confusion and remained unresolved. Despite receiving actual notice of Druyan-Sagan's rights and its infringement of the same, Luma has continued to willfully, intentionally, and purposefully infringe on Plaintiff's rights for its financial benefit, maintaining the Infringing Advertisement with the Statement on Luma's Facebook page.

26. Druyan-Sagan has developed substantial commercial value in Dr. Sagan's name, voice, identity, persona, and copyrighted works through decades of careful stewardship, licensing, and enforcement. Druyan-Sagan is highly selective regarding commercial associations with Dr. Sagan and authorizes such uses only when they align with his ideas and legacy. Authorized commercial partners have paid substantial licensing fees for limited rights involving Dr. Sagan and his intellectual property.

27. Reflecting the premium value of the Property, Druyan-Sagan has entered into a number of substantial, but carefully vetted and circumscribed, licensing

relationships with highly prestigious business organizations for the use of the Druyan-Sagan's Property. Representative examples of these licenses include: (i) in 2017, Apple utilized Dr. Sagan's voice as he read a famous excerpt from his best-selling book, *Pale Blue Dot*, as part of an advertising campaign for the iPhone; (ii) in 2019, Fiat Chrysler utilized an excerpt of Dr. Sagan's voice from the Series in an advertising campaign; (iii) in 2022, Space Perspective utilized a recording of Dr. Sagan's voice in a digital advertising campaign; and (iv) in 2025, Netflix utilized Dr. Sagan's voice recording in an original film released by the platform.

28. By obtaining the commercial and promotional value of an association with Dr. Sagan without authorization or compensation, Luma deprived Druyan-Sagan of its exclusive right to control the usage of Dr. Sagan's intellectual property and impaired its ability to protect Dr. Sagan's legacy by negotiating licensing and sponsorship opportunities.

29. Recognizing the commercial value of Dr. Sagan's renown and goodwill, Luma misappropriated the Property by reproducing in the Infringing Advertisement an excerpt from the Episode containing the copyrighted embodiment of Sagan's performance of the Statement without first obtaining Plaintiff's prior authorization. Specifically, the Infringing Advertisement prominently exploits the Property by using Dr. Sagan's approximately eight-second recitation of the Statement that forms the centerpiece of the entire advertisement and constitutes the only spoken content therein. Moreover, the deep tone, precise enunciation, crisp delivery, measured cadence, and distinctive timbre in the Infringing Advertisement are unmistakably identifiable as Dr. Sagan's voice recording from the Episode.

30. Luma's unauthorized exploitation of the Property by incorporating the Statement into the Infringing Advertisement impairs Dr. Sagan's reputation and goodwill, and further constitutes willful copyright and trademark infringement. That is, the Infringing Advertisement's deliberate pairing of the Statement with cosmological imagery of the sun, planets, and outer space; prolonged display of the

mathematical symbol for pi (i.e., π); incorporation of the leading digits of pi, 3.14, into the name of Luma's product (i.e., Ray 3.14); and conclusion imagery of a fruit pie are indicative of the willfulness of Luma's conduct. The aforementioned elements were intentionally, not incidentally, included in the Infringing Advertisement to create in viewers' minds an association between Luma and Ray 3.14 on the one hand, and Dr. Sagan, the Statement, and the Property, on the other hand.

31. Luma's use of the Statement and unmistakable invocation of Dr. Sagan's legacy through its intentional inclusion in the Infringing Advertisement of cosmological and pie-related visual imagery betrays Luma's deliberate and deceptive efforts to falsely associate Ray 3.14 with Dr. Sagan and his reputation for scientific authority, intellectual integrity, and innovation. In so doing, Luma traded on the goodwill that Druyan-Sagan spent decades building, preserving, and protecting, as well as created a false and misleading impression that Dr. Sagan sponsored, endorsed, approved, or was otherwise affiliated with Luma and Ray 3.14, when no such affirmation has actually been given.

32. Luma has refused to comply with Druyan-Sagan's repeated demands that it cease and desist from infringing its rights by continued use of the Infringing Advertisement. Despite Druyan-Sagan's good-faith efforts to resolve this matter amicably, Luma's response has been both dismissive and misleading. The Infringing Advertisement remains in circulation to this day, including on Defendants' Social Media Platform, where it remains accessible throughout the country and continues to constitute an ongoing act of willful infringement.

33. Luma's arrogant and continued refusal to cease its infringement confirms its conscious disregard of Plaintiff's rights in the Property and its intent to monetize its AI platform by capitalizing on the false impression that Dr. Sagan sponsored, endorsed, or was otherwise associated with Ray 3.14. Indeed, in a duplicitous attempt to placate Druyan-Sagan, Luma represented that it would remove a Facebook post on Luma's page containing the Infringing Advertisement, which misappropriates the

Property. Yet months later, the post remains publicly available and has amassed more than 2.7 million views since its publication, demonstrating the continuing and widespread nature of Luma's infringement in the face of actual notice and a direct request to cease and desist—the unmistakable hallmarks of willful and bad-faith misconduct.

34. Luma's unauthorized exploitation of the Property bypassed the rigorous approval process required of every prospective licensee. Druyan-Sagan authorizes commercial uses of the Property only in rare and carefully selected circumstances, after determining that the proposed use is consistent with Dr. Sagan's legacy, satisfies Druyan-Sagan's exacting standards, does not foreclose or diminish the possibility of other attractive collaborations or licensing opportunities and provides for appropriate terms. By taking and using the Property for its own commercial benefit without seeking approval or paying any licensing fee, Luma arrogated to itself rights that legitimate partners must carefully negotiate and earn. Luma's misconduct has deprived Druyan-Sagan of its most basic rights secured by law: its exclusive ability to determine whether, how, and in connection with which products the Property may be used, while diminishing the exclusivity, goodwill, and commercial value of the Property in connection with legitimate brand partnerships and licensing opportunities.

35. For its part, Luma has profited and continues to profit tremendously from its unauthorized use of the Property. For example, on information and belief, Ray 3.14 has been rapidly adopted by and incorporated into the workflows of a considerable number of users of both Luma's AI video generator, "Dream Machine," and Adobe Acrobat's "Creative Cloud," the use of which has contributed in no insignificant way to the staggering revenue flowing to Luma from the licensing and use of Ray 3.14.

36. Luma is aware that its conduct constitutes a myriad of actionable violations of federal copyright and trademark law. A sophisticated, well-heeled entity with billions of dollars of venture capital at its disposal, Luma creates, protects, and enforces its own intellectual property and regularly negotiates, executes, and enforces

licensing agreements. Luma also enjoys the benefits of access to world-class intellectual property counsel that is well-versed in the strictures of intellectual property law and the dictates of proper licensing. As such, Luma is well aware of industry standards and legal requirements governing the use of third parties' copyrighted materials and trademarks, and their names, images, and likenesses.

37. Despite this knowledge and experience, Luma proceeded to use the Statement to promote Ray 3.14 without authorization, in willful disregard of Druyan-Sagan's rights.

38. Despite demands prior to this lawsuit from Druyan-Sagan that Luma cease and desist such unlawful conduct and take appropriate remedial actions therefor, Luma firmly declined.

39. Luma's willful and deliberate misconduct has caused, and continues to cause, substantial, manifest, and irreparable harm to Druyan-Sagan, while enriching Luma at Druyan-Sagan's expense. By this lawsuit, Druyan-Sagan seeks to bring Luma's conduct to a stop and to obtain appropriate relief for Luma's brazen theft of its intellectual property and personal identity assets.

40. Thus, through this action, Druyan-Sagan seeks injunctive relief, recovery of its damages and Luma's attributable profits, statutory remedies, attorneys' fees and costs, and all other relief the Court deems just and proper.

## FIRST CAUSE OF ACTION

## COPYRIGHT INFRINGEMENT

## (17 U.S.C. § 501)

41. Plaintiff incorporates by this reference each and every averment contained in Paragraphs 1 through 40, inclusive, as though fully set forth herein.

42. Plaintiff is the owner of all rights, title, and interest in the Episode, including but not limited to the copyrights thereto, which are valid and subsisting under the laws of the United States.

43. Plaintiff has complied in all respects with the Copyright Act and all of the laws of the United States governing copyrights, and the Episode has been timely registered with the United States Copyright Office, bearing Registration No. PA0000146361.

44. Defendants have infringed, and continues to infringe, Plaintiff's copyright interests in the Episode by reproducing, distributing, publicly displaying and publicly performing the Statement from the Episode on the Infringing Advertisement, and derivative versions thereof, without permission or consent, in violation of Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501.

45. In addition, Defendants, without the permission or consent of Plaintiff, knowingly encouraged, induced, materially contributed to, and/or facilitated the unauthorized reproduction, distribution, public display and public performance of the Statement from the Episode, and derivative versions thereof, and they have the right and ability to stop or limit the infringement and a direct financial interest in such infringing activities.

46. Defendants are therefore directly and secondarily liable for infringement under the Copyright Act.

47. Each of the Defendants directly and individually performed the acts alleged herein, and also did so jointly and in concert with one another, or as an agent or alter ego of the other. Accordingly, each of the Defendants are liable for all of the acts alleged herein because they were the cause in fact and proximate cause of all injuries Plaintiff has suffered.

48. As detailed *supra*, Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and with complete indifference to Plaintiff's rights.

49. Defendants' wrongful acts have caused, and are causing, great injury to Plaintiff, of which damages cannot be accurately computed, and unless this Court

restrains Defendants from further and continuing commission of said acts, Plaintiff will suffer irreparable injury, for all of which it is without an adequate remedy at law.

**SECOND CAUSE OF ACTION**

**FALSE ENDORSEMENT AND TRADEMARK INFRINGEMENT**

**(Lanham Act § 43(a) / 15 U.S.C. § 1125(a))**

50. Plaintiff incorporates by this reference each and every averment contained in Paragraphs 1 through 40, inclusive, as though fully set forth herein.

51. Plaintiff holds valid and protectable trademark rights in the Mark, Statement and Dr. Sagan's voice, delivery, persona, and distinctive and distinguishing characteristics, as contained in the Statement, which are inherently distinctive and recognizable to consumers.

52. Defendants' unauthorized use of the Mark and Statement, as described above, constitutes false endorsement and trademark infringement of Plaintiff's rights in Dr. Sagan's voice, delivery, persona, and distinctive and distinguishing characteristics in violation of 15 U.S.C. § 1125(a).

53. Defendants' incorporation and use of the Mark, Statement and Dr. Sagan's voice, delivery, persona, and distinctive and distinguishing characteristics (including but not limited to his voice and particular performance of words as presented in the Statement from the Episode) tend to cause likely confusion, mistake, and deception as to the endorsement, affiliation, association, sponsorship, or approval of the Luma product promoted by the Infringing Advertisement, namely Ray 3.14.

54. Defendants have not been authorized by Plaintiff to incorporate or use the Mark, Statement or Dr. Sagan's voice, delivery, persona, and distinctive and distinguishing characteristics in the Infringing Advertisement, and Defendants are not endorsed, affiliated, or associated with, sponsored by, or approved by Plaintiff.

55. Defendants' unauthorized use of the Mark and Statement has caused, and is likely to continue to cause, confusion, mistake, or deception as to Plaintiff's sponsorship of the Infringing Advertisement. Consumers have believed and will

continue to mistakenly believe that Plaintiff endorses, approves, recommends, or is affiliated or associated with Luma and Ray 3.14 as a direct result of Defendants' unauthorized use of the Statement.

56. Defendants knew or should have known that their unauthorized use of the Mark, Statement and Dr. Sagan's voice, delivery, persona, and distinctive and distinguishing characteristics by incorporating Dr. Sagan's distinctive voice in, and rendition of the Statement, was likely to cause confusion or mistake regarding whether Plaintiff has endorsed, is affiliated or associated with, sponsors, is connected to, or has approved of the Infringing Advertisement and/or the Luma product promoted by the Infringing Advertisement, namely Ray 3.14.

57. Defendants' unauthorized use of the Mark, Statement and Dr. Sagan's voice, delivery, persona, and distinctive and distinguishing characteristics occurred in interstate commerce and in connection with the advertising and promotion of Ray 3.14.

58. As a direct and proximate result of Defendants' actions, Plaintiff has been damaged in an amount presently unknown but to be proven at the time of trial.

59. Defendants' conduct has been intentional, willful, and with full knowledge of the violation of Plaintiff's rights, and was done with the intent to trade upon the goodwill and reputation of Dr. Sagan and this case should be deemed exceptional and Defendants should be held liable for enhanced damages, attorneys' fees and costs, disgorgement of Defendants' profits due to the infringement and prejudgment interest.

60. Defendants have caused, and continue to cause, Plaintiff irreparable harm for which Plaintiff has no adequate remedy at law.

/ / /

/ / /

/ / /

/ / /

## THIRD CAUSE OF ACTION

## UNFAIR COMPETITION

## (Common Law)

61. Plaintiff incorporates by this reference each and every averment contained in Paragraphs 1 through 40, inclusive, and Paragraphs 51 through 60, inclusive, as though fully set forth herein.

62. The acts of Defendants complained of herein constitute acts of unfair competition against Plaintiff under the common law of the state of California, which acts have been committed knowingly and willfully and have injured Plaintiffs in their trade and business.

63. By the acts and activities of Defendants complained of herein, Defendants have been unjustly enriched.

64. As a direct and proximate result of the acts and activities of Defendants complained of herein, Plaintiffs have been damaged in an amount not yet ascertainable.

65. Plaintiffs are informed and believe, and based thereon allege, that Defendants, in doing the things herein alleged, acted willfully, maliciously, and oppressively, with full knowledge of the adverse effect of their actions on Plaintiffs, and with willful and deliberate disregard for the consequences to Plaintiffs, and should be held liable for exemplary/punitive damages pursuant to Cal. Civ. Code § 3294.

66. As a consequence of Defendants' violations, Plaintiff is entitled to relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1. For preliminary and permanent injunctive relief prohibiting Defendants and their officers, directors, employees, agents, representatives, subsidiaries, affiliates, successors, assigns, and all persons acting in concert or in participation with Defendants from:

a. reproducing, adapting, distributing, publicly displaying, publicly performing, or otherwise exploiting protected audiovisual or audio material from the Episode, and/or derivatives thereof, without Plaintiff's authorization;

b. using the Mark, Statement or Dr. Sagan's distinctive voice, delivery, persona, and distinctive and distinguishing characteristics in any manner likely to cause confusion, mistake, or deception as to Dr. Sagan's or Plaintiff's association with, affiliation with, sponsorship or endorsement of, or approval of Defendants, Ray 3.14, or any other product or service; and

c. continuing to publish, display, distribute, or otherwise disseminate the Infringing Advertisement or any substantially similar advertisement;

2. For an award of Plaintiff's actual damages and Defendants' profits attributable to Defendants' copyright infringement pursuant to 17 U.S.C. § 504(b), in an amount to be determined at trial;

3. Alternatively, at Plaintiff's election, for an award of statutory damages pursuant to 17 U.S.C. § 504(c), including enhanced statutory damages for Defendants' willful infringement to the fullest extent permitted by law;

4. For an award of Defendants' profits, Plaintiff's damages, and the costs of this action arising from Defendants' violations of the Lanham Act pursuant to 15 U.S.C. § 1117(a);

5. For enhanced damages, including an award of up to three times Plaintiff's actual damages, as permitted by 15 U.S.C. § 1117(a);

6. For compensatory damages arising from Defendants' violations of California common law, in an amount to be determined at trial;

7. For punitive and exemplary damages under Cal. Civ. Code § 3294 based on Defendants' oppression, fraud, or malice;

8. For Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by 17 U.S.C. § 505, 15 U.S.C. § 1117(a), and other applicable law;

9. For pre-judgment and post-judgment interest to the fullest extent permitted by law; and

10. For such other and further relief as the Court deems just and proper.

Dated: August 25, 2026

**CMG LAW APC**

By: /s/ Joseph William Roesler
Joseph William Roesler
Ashkon Michael Ariaee
Conor James Singleton Winston

**ONE LLP**

By: /s/ John Tehranian
John Tehranian
Peter R. Afrasiabi

Attorneys for Plaintiff,
Druyan-Sagan Associates, Inc.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all claims and all issues properly triable thereby.

Dated: August 25, 2026

**CMG LAW APC**

By: /s/ Joseph William Roesler
Joseph William Roesler
Ashkon Michael Ariaee
Conor James Singleton Winston

**ONE LLP**

By: /s/ John Tehranian
John Tehranian
Peter R. Afrasiabi

Attorneys for Plaintiff,
Druyan-Sagan Associates, Inc.